HOLMES, Judge.
This is a voluntary termination of parental rights case and a denial of custody to a grandparent.
This matter was originally before the Montgomery County Juvenile Court on two petitions for custody of a minor child, Anthony David Mayer, approximately seven months old. AGAPE of Central Alabama (AGAPE) petitioned for termination of parental rights and for custody of the child for the final purpose of placing the child for adoption. The natural mother cosigned the petition. Beth Mayer, the great-grandmother (grandmother) also petitioned for temporary custody of the child.
After an ore terms hearing the trial court terminated the parental rights of the mother and the alleged father and awarded *87 permanent custody of the child to AGAPE for anticipated adoptive placement. Further, the trial court denied the grandmother’s petition for temporary legal custody.
The grandmother appeals, and we affirm.
The dispositive issue on appeal is whether the trial court erred in terminating parental rights and awarding custody of the child to AGAPE.
Viewing the record with the attendant presumptions, we find the following is pertinently revealed.
Tamara Mayer (mother), a twenty-year-old single female, contacted AGAPE during her fifth month of pregnancy about the possibility of placing her unborn child for adoption. AGAPE worked with the mother until the birth of the child on September 25, 1987. Up until the time of birth of the child, the mother remained firm in her conviction to place the child for adoption, even though she stated that her grandmother (Beth Mayer) objected to her decision.
After the child was born, the mother changed her mind and took the child home. Three days later, however, she brought the child back to AGAPE and requested to proceed with the adoption plans. On September 30, 1987, AGAPE and the mother jointly filed a petition, requesting to terminate the mother’s parental rights. The petition alleged that the mother was financially unable to provide for the child now and in the foreseeable future and that it was in the best interests of the child to place him with AGAPE so that adoptive placement could be facilitated. The alleged father was notified by publication, but made no response. In fact, the mother testified that he denied being the father.
On October 2, 1987, the grandmother also filed a petition, seeking custody of the child. The petition alleged that the grandmother could provide the care, custody, and supervision of the child and, therefore, requested temporary legal custody.
At the hearing the mother testified that she had discussed with her attorney and her father the consequences of terminating her parental rights in the child and placing him for adoption. She testified that she realized that this would mean a final termination of all of her rights with respect to the child, but that she was not financially able to take care of the child no matter how much she wanted to.
She testified that for the past two months she has lived with her boyfriend (not the alleged father) and was doing well, but that she believed it was in her child’s best interests to be placed for adoption. She wanted her child to have a good home with a mother and father. She further testified that she did not believe that it was in the child’s best interests to be placed with the grandmother.
The record further reveals that the grandmother, who requested temporary custody of the child, is a sixty-two-year-old disabled woman. Her only source of income is her monthly Social Security disability check for $417. Also, living with the grandmother is a daughter who is likewise considered disabled by the Social Security Administration due to an “environmental illness.” The grandmother testified that the daughter has an allergy that affects her central nervous system because of fragrances and chemicals that people wear on their bodies. She explained that shampoo, soap, or deodorant that people use affects the daughter.
The grandmother further testified that her home is divided into different living areas — one for herself and one for the daughter. In fact, one room is used as a “detoxification” room where certain materials which are brought into the home are placed for up to four weeks.
The record further reveals that, within the six months after the filing of the petitions, neither the mother nor the grandmother made any attempt to see the child.
The purpose of the 1984 Child Protection Act is stated in § 26-18-2, Ala.Code (1975) (1986 RepLVol.), which provides in part:
“It is the purpose of this chapter to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.”
*88 The trial court concluded that termination of the mother’s parental rights would serve the child’s best interests. We agree.
We note that this is not a case where a parent’s rights have been terminated against her will. Put another way, this is not a case of involuntary termination, but is a voluntary termination of parental rights by the mother, pursuant to § 26-18-7(a), Ala.Code (1975) (1986 Repl. Yol.).
The evidence is clear that this is a case where the mother voluntarily chose to relinquish her parental rights in order that the child could be adopted. It is undisputed that the mother knew what she was doing and was, in fact, counseled by an attorney. Further, the mother joined AGAPE in filing the petition to terminate her rights in her child and has continued to support this decision.
In view of this voluntary decision by the mother, as well as the evidence before the trial court concerning the request for custody by the grandmother, we cannot say that the trial court erred in terminating the mother’s parental rights and awarding custody of the child to AGAPE.
The evidence before the trial court was clear and convincing that the mother was “unable or unwilling to discharge [her] responsibilities to and for the child ... and that such conduct or condition is unlikely to change in the foreseeable future....” Ala.Code (1975), § 26-18-7(a). The evidence was overwhelming that the mother wanted to give up her child for adoption. In fact, there was no indication apparent from the record that the mother wanted anything other than to have her parental rights terminated and the child placed for adoption. Subsequent to the filing of the termination petition, the mother has had no contact with the child and has not wavered in her decision to voluntarily relinquish her rights.
Furthermore, when considering the above and the posture of this case, we find that the trial court’s decision to deny the grandmother’s petition for temporary custody was not error.
We note that the grandmother is an elderly, disabled woman with a limited income. Her home requires extremely special care due to her daughter’s illness. Additionally, the grandmother has uncertain and unclear plans for rearing the child.
We have carefully reviewed the record and find that the trial court’s decision is amply supported by the evidence. This is especially so in view of the presumption of correctness accorded the trial court’s determination following an ore terms hearing. McConathy v. State Department of Human Resources, 510 So.2d 269 (Ala.Civ.App.1987).
Additionally, we note that we are aware of Ex parte Brooks, 513 So.2d 614 (Ala.1987), and have concluded that it has no application to the case before us now. The thrust of Brooks is that a parent cannot avoid the obligation of support through termination of parental rights. In the present case the initial proceeding contemplated a substitution of parental rights by adoptive parents which would necessarily include the obligation to support the child. Such was not the case in Brooks.
Therefore, this case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.